# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

**444444444444444**
**NO. 03-03-00568-CR**
**444444444444444**

**Talvin Christion, Appellant**

**v.**

**The State of Texas, Appellee**

**44444444444444444444444444444444444444444444444444444444444**
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT**
**NO. 9024227, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING**
**44444444444444444444444444444444444444444444444444444444444**


### M E M O R A N D U M   O P I N I O N


Appellant Talvin Christion[1] appeals his conviction for aggravated assault by causing serious bodily injury. *See* Tex. Pen. Code Ann. § 22.02(a)(1) (West 2003). The jury found appellant guilty. The trial court assessed his punishment at five years' imprisonment.


### Point of Error

Appellant advances a single point of error: "The trial court erred in finding appellant guilty beyond a reasonable doubt." This was a jury trial at the guilt/innocence phase of the trial. The trial court was not the trier of fact. We will view appellant's stated point of error, however, as a challenge to the legal sufficiency of the evidence to support the jury's verdict. This is the basis on which he has briefed the issue on appeal. We will affirm the judgment of conviction.

---

[1] In his trial testimony, appellant testified that his full name was Talvin Edward Christion, Jr. The indictment and other records were not amended thereafter to reflect appellant's full name.

**Legal Sufficiency - Standard of Review**

In determining whether the evidence is legally sufficient to support the judgment, we view the evidence in the light most favorable to the judgment, asking whether any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lane v. State*, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996); *Emery v. State*, 881 S.W.2d 702, 705 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 1192 (1995).

The evidence, viewed in this light, and all reasonable inferences drawn therefrom, are evaluated in this review. *See Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). A reviewing court must consider all evidence, rightly or wrongly admitted, that the trier of fact was permitted to consider. *See Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993), *cert. denied*, 511 U.S. 1046 (1994). The standard of review is the same for both direct and circumstantial evidence cases. *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 1020 (1993). Appellate courts measure the legal sufficiency of the evidence against a hypothetically correct charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In analyzing a challenge to the legal sufficiency of the evidence, the reviewing court does not realign, disregard, or weigh the evidence. *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.—Austin 1997, no pet.). The jury as the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given the testimony, and may accept or reject all or any of any witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), *cert. denied*, 488 U.S. 872 (1988); *Williams v. State*, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). Reconciliation of evidentiary conflicts is solely the function of the trier of fact.

*See Miranda v. State*, 813 S.W.2d 724, 733-34 (Tex. App.—San Antonio 1991, pet. ref'd); *Juarez v. State*, 796 S.W.2d 523, 524 (Tex. App.—San Antonio 1990, pet. ref'd).  Moreover, the evidence is not rendered insufficient merely because the defendant presented a different version of the events. *Turro v. State*, 867 S.W.2d 43, 47-48 (Tex. Crim. App. 1993).

**Facts**

The aggravated assault here followed an automobile accident at the intersection of Airport Boulevard and Gunter Street in Austin on Sunday morning, February 24, 2002, about eleven o'clock.  Augustin Garcia, who had lived in Austin for several years, was on his way home with food purchased at a restaurant.  He was driving his brother's pick-up truck.  Garcia testified that as he turned left off of Airport, he hit the rear of a car, which had turned without giving a signal.  Both the State and the defense evidence indicated that it was "not a big accident."

Garcia related that he got out of the truck and was approached by two men who had exited the car he hit.  Without dispute, the record identifies the two men as appellant and his cousin, Michilio Rankin.  Garcia reported that the two men were yelling and cursing, demanding his driver's license and proof of car insurance.  Garcia explained that he had no driver's license but that the "insurance" was in the truck.  At this point, one of the men yanked a gold necklace off of Garcia's neck and tried to take Garcia's watch.  The other man unsuccessfully attempted to take Garcia's silver identification bracelet.  Being unable to get the watch or bracelet, one of the men started hitting Garcia, then both men began hitting Garcia in the face and head with their fists.  Two of Garcia's teeth were knocked out and a third tooth was broken.  Garcia was bleeding.  He was finally able to get into the truck and drive several blocks away before stopping.  Garcia was taken to the

hospital by ambulance. He was in pain and he was given painkillers. Garcia denied that he pushed, shoved, hit or punched either man before they assaulted him.

David Campos was with his wife and daughters in a motor vehicle behind the Cadillac that appellant and Rankin exited. He observed the accident and the assault. Campos said appellant and Rankin accosted Garcia, yelling and cursing and "asking for insurance." Campos heard one of the men tell Garcia that he wanted the insurance or the pick-up truck was his. Campos heard Rankin tell Garcia that he was going to "kick his ass" and that the "truck is mine." One of the men was observed trying to take something away from Garcia, and trying to get into Garcia's pockets. One of the men said, "give me your keys." Campos heard the two men telling Garcia they wanted his necklace "or something like that" and then grabbed for the necklace. Campos identified Rankin as the one who obtained the necklace.

Campos thought that Garcia looked scared. He stated that appellant and Rankin began beating Garcia. He did not see Garcia hit or strike either man. Garcia tried only to protect his face from being hit. Garcia finally got back in the truck and drove away. Campos called the police on his cellular phone and followed Garcia to see if he could help. Campos got Garcia to stop the truck. The police were called again and an ambulance took Garcia to the hospital.

Austin Police Officer Jason LaDuque testified that he responded to the call of an accident and disturbance on February 24, 2002. He found Garcia in obvious need of medical attention. Garcia was covered in blood and his face was swollen. LaDuque found Garcia's two missing teeth in the roadway. The officer related that, based on his experience, human hands are capable of causing death or serious bodily injury when used to strike another person on or about the

4

head. Raul Hernandez, a City of Austin paramedic, treated Garcia at the scene before his transportation to the hospital. He testified about Garcia's abrasions, lacerations to the face, the bruises, and the condition of the teeth.

Dr. Jesse Stephen Rodriguez, a physician at Brackenridge Hospital, treated Garcia in the emergency room on February 24, 2002. He testified that Garcia had suffered contusions across the face and forehead, one on the chin, cheek and forehead, as well as lacerations, one on the eye and one on the chin. Some of the lacerations required stitching. Further, Garcia suffered a nasal fracture and lost two teeth, a front incisor and a molar. Dr. Rodriguez explained that a tooth is a living organ and that if teeth are not reimplanted within an hour and a half there is a hundred percent failure rate on such implantations. The doctor testified that, in his opinion, a human hand, especially a fist, is capable of causing death or serious bodily injury, even from one blow.

Appellant testified that he remained in the Cadillac while Rankin confronted Garcia about the accident. He did not leave the car until Rankin and Garcia got into a fight. Appellant related that he stepped between the two men, pushed Rankin back and pushed Garcia away; that Garcia began to hit him and he retaliated. In the ensuing struggle, appellant said his hands got tangled with Garcia's gold necklace and the necklace was pulled off. He did not know what happened to the necklace.

Appellant admitted that he struck Garcia with "a combination" of two to five punches using his fists. He did not know just how many times he actually hit Garcia in the face and head. Appellant acknowledged that he was raised and trained as a boxer. He related that he was calm while striking Garcia, but that if anyone saw him in a street fight and thought he was "berserk," that

5

would be his normal behavior. Appellant admitted that Garcia's injuries were caused by Rankin and by him.

In the jury charge, the trial court submitted both counts of aggravated assault alleged in the indictment, one by causing serious bodily injury and one by using a deadly weapon, to wit: a hand. The jury was authorized to convict only on one count. The trial court wisely submitted separate verdict forms for a finding of guilty on each count.[2] The trial court also charged on the law of parties. The jury returned a verdict finding appellant guilty of aggravated assault by causing serious bodily injury as charged in the first count of the indictment.

## Discussion

Appellant argues "that there is no way a rational trier of fact could have found appellant guilty beyond a reasonable doubt." In support of such argument, appellant reiterates the evidence in the light most favorable to his claim of innocence. Appellant points out that the undisputed evidence shows that Rankin started the fight with Garcia and "was out of control" and the "main one" in assaulting Garcia. Despite his own testimony to the contrary, appellant argues that Rankin took the gold chain or necklace from Garcia. Appellant also asserts that it was Rankin who knocked out Garcia's teeth and argues that Rankin committed the offense of which he (appellant) was convicted by causing Garcia to suffer the protracted loss of an organ (his two teeth).

---

[2] This practice avoids a possible problem with only a general verdict where there are several counts. *See Fuller v. State*, 827 S.W.2d 919, 931 (Tex. Crim. App. 1992); *Kitchens v. State*, 823 S.W.2d 256, 257-58 (Tex. Crim. App. 1991).

Appellant argues that he did not leave the Cadillac until Rankin and Garcia were fighting; that he sought to act as peacemaker and separate them; that he did not hit Garcia until Garcia hit him and then he acted only in self-defense. As noted earlier, evidence is not rendered insufficient merely because a defendant presents a different version of the events. *See Turro*, 867 S.W.2d at 47-48.

Appellant cites no authority and presents no argument that any element of the offense of which he was convicted is legally insufficient when considered in the light most favorable to the jury's verdict. We have reviewed all the evidence in the light most favorable to the jury's verdict as we are required to do, and we conclude that any rational trier of fact could have found all the essential elements of the offense charged beyond a reasonable doubt. Appellant's legal sufficiency challenge is overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices Kidd, Pemberton and Onion[*]

Affirmed

Filed: April 29, 2004

Do Not Publish

---

[*] Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

7